IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GLADYS JUNE H.,[1]<br><br>       Plaintiff,<br>  v.<br><br>KILOLO KIJAKAZI, in her capacity as Acting Commissioner of the U.S. Social Security Administration,<br><br>       Defendant. | Case No.:  3:21-cv-01831-AN<br><br><br>OPINION AND ORDER |

Gladys June H. seeks judicial review of a final decision of the Commissioner of Social Security finding that she had excess resources for the period from October 2017 through December 2019 under Section 416.1201(a) of the Social Security Act ("Act").  The ALJ determined that the inheritance plaintiff received from her mother's estate was a "resource" for the purposes of Supplemental Security Income ("SSI") eligibility and exceeded the allowable amount.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits, with the caveat that those benefits be paid out to a representative payee.

**BACKGROUND**

Plaintiff has been receiving Supplemental Security Income benefits since September 27, 2008. Tr. 15.  On May 3, 2018, the Social Security Administration issued a notice to plaintiff stating that she was ineligible to receive her benefits beginning June 2018. Tr. 131.  On June 13, 19, and 20 of 2018, plaintiff filed a request for reconsideration disputing her ineligibility.  Tr. 159, 170, 172.  Upon reconsideration on December 13, 2018, the SSA affirmed its previous determination to suspend plaintiff's

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

benefits and refuse reinstatement.  Tr. 248-52.  The SSA found that plaintiff had not received fair market value for her spend-down of her inheritance, and was not eligible for benefits for 26 months (October 2017- December 2019).  Plaintiff then filed a written request for a hearing before an ALJ in February 2019.  Tr. 253-54.  On November 6, 2019, plaintiff appeared at a hearing before ALJ Lynch with her attorney.  Tr. 23-35.  A supplemental hearing followed on November 26, 2019 due to time constraints.  Tr. 434-459.  ALJ lynch issued his decision on December 27, 2019 which reiterated the findings of the SSA during reconsideration.  Tr. 15-20.  Plaintiff now seeks judicial review of the ALJ's decision.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  *Id.*; *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  *See Burkhart v. Bowen*, 856 F.2d 1335,

1338 (9th Cir. 1988).

"The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or older, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110. In order to be eligible for SSI, a person must be elderly, blind, or disabled, and also the person's "income and resources" must be below a specified level. *See* 42 U.S.C. § 1382(a); *Cervantez v. Sullivan*, 963 F.2d 229, 231 (9th Cir. 1992). Since January 1989, the resource limit has been $2,000 for an unmarried individual. 42 U.S.C. § 1382(a)(3)(B). *See Kubetin v. Astrue*, 637 F. Supp. 2d 59, 62 (D. Mass. 2009).

Agency regulations define "resources" as "cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). The statute allows "for the exclusion of certain items in calculating a person's resource level. For example, the term 'resources' does not include a home, household goods, and personal effects, so long as their value does not exceed the amount set as reasonable by the SSA Commissioner." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999), citing 42 U.S.C. §§ 1382b(a)(1) and (a)(2)(A). Money received as a settlement for a wrongful death action or other lawsuit is not among the exclusions set forth by Congress or the agency. *See Blausey v. United States Trustee*, 552 F.3d 1124, 1133 (9th Cir. 2009) ("The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded.").

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ erred in determining the amount transferred for less than fair market value,

2. Whether the ALJ erred in determining the purpose of plaintiff's transfers for less than market value,

3. Whether the ALJ erred in finding that plaintiff did not qualify for an exception due to undue hardship, thus erring in not reinstating her benefits.

**A.     The ALJ erred in determining that plaintiff did not receive fair market value for $19,205.25 of her inheritance.**

Plaintiff presented her "revised estimate" in October 2019, with the purpose of it being considered at the November 2019 hearing. Tr. 289-405. This Court agrees with Plaintiff that the ALJ completely disregarded this evidence in his decision. As previously mentioned, an ALJ must consider the entire record. *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986) (The record as a whole must be considered); *see Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (both the evidence that supports and the evidence that detracts from the ALJ's conclusion must be weighed). Here, the ALJ failed to consider evidence that the Administration had been asking plaintiff for. Tr. 176. The "revised estimate" accounts for plaintiff's spending that was not previously accounted for, such as personal expenses, expenses for her pets and repairs to her property. Tr. 293. Defendant argues plaintiff submitted the revised estimate after she found out her ineligibility period would be 26 months. Def. Br. #22 at 6. However, plaintiff would have submitted more evidence of her spending regardless of such notice because the Administration had emphasized they needed more proof of her spending before they could reinstate benefits. Tr. 176. There is also proof in the record that finding this evidence was an ongoing process between plaintiff and her attorney from the start. *See* Tr. 223 (Plaintiff's initial estimate: "I will continue to work with Ms. Hammond to account for the $3,855.25").

Furthermore, defendant argues that the ALJ reasonably accounted for plaintiff's vacation rentals by referring to the initial estimate. Def. Br. #22 at 5. There can be various interpretations and arguments surrounding whether or not the rental could be a gift to others, considering plaintiff purchased the rental to reside in with others. However, that is not the proper inquiry here. The proper inquiry is whether plaintiff received fair market value for her purchase. "Fair market value is equal to the current market value of a resource at the time of transfer or contract of sale, if earlier." 20 C.F.R. § 416.1246(b). Current market value "means the price of an item on the open market in your locality." 20 C.F.R. §

416.1101.  If plaintiff wanted to purchase a vacation rental because she had no where else to live, and she paid the price of such rental on the open market in her locality, it follows that she did receive fair market value for such purchase.  Therefore, the ALJ erred in applying rule 20 C.F.R. § 416.1246(b) to plaintiff's living expense arrangements.

Regarding her other purchases, there is evidence to prove some, rather than most, with receipts.  *See* 329, 337, 355-71.  Plaintiff argues the previously unaccounted for purchases were spent on recreation (drinking at bars, gambling).  Tr. 437.  The record reflects these spending habits, yet the ALJ failed to cite to such evidence.  *See* Tr. 176, 446-47.  Plaintiff concedes there is not clear-cut evidence in the record tracking every single purchase she made after she received her inheritance.  Pl. Br. #15 at 4, 8. However, looking at the record holistically, there are obvious signs that plaintiff is inept in handling her own funds due to her mental incapacities.  Plaintiff admits that she did not spend her inheritance in a well-thought-out manner, however, there are several examples of coercion, confusion, fear, and pressure, which all preclude plaintiff from making clear decisions involving money.

Evidence in the record shows the reasons why plaintiff originally received disability benefits, which is due to her major depressive disorder with anxiety features, and her personality disorder with borderline features.  Tr. 318.  The ALJ in at determination stated "the [plaintiff] has inflexible and maladaptive personality traits that cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by persistent disturbances of mood or affect; pathological dependence; and intense and unstable interpersonal relationships and impulsive and damaging behavior." Tr. 318.  All of ALJ Armitage's findings are evidenced by various instances in the record to show plaintiff's decision-making process. First, Plaintiff erroneously thought she could buy out her sister's share of their mother's estate in order to purchase her late mother's home, where she was originally living:

> I didn't understand anything about how to purchase a home,
> but from what -- the way I gathered it was I could take whatever
> inheritance I had, and I would just bought my sister out. So, I
> tried to talk to the personal representative's attorney and didn't
> really get a whole lot of help there. And I gave him an offer and
> they shot me down.

Tr. 440.

Plaintiff did not understand the nature of how her mother's estate passed through probate. So much so that she had to be evicted from the home after another couple purchased it. Tr. 337, 442. Second, she relied on others for transportation, making purchases and receiving life advice. Tr. 442-444. This wound up being detrimental to plaintiff, as the people she thought were her friends wound up stealing from her. Tr. 29-30, 444-45. One of her "friends" who she was living with wound up being indicted for robbery in the second degree, as well as theft in the second degree, where he was later convicted of only the theft charge. Tr. 344-45, 352-353. This pattern of behavior and choices on the part of plaintiff reflects the consequences of her disability and mental incapacities, which was generally unacknowledged by the ALJ in his decision even though he noted several instances where she was coerced and stolen from. Tr. 18. In both hearings with Plaintiff, the ALJ expressed several concerns with plaintiff's capacity to handle money, make decisions and live independently. Tr. 33, 458-59 ("I think it's important that whatever money you have, you know, whether it's $50 or $750 a month, you need somebody to help you manage that because you obviously do not have the judgment that's required to manage your own funds.") However, those same concerns are not mentioned in the ALJ's final decision. In conclusion, the ALJ failed to properly consider the evidence that would not support his final decision. The ALJ also did not resolve the evident conflict within the record surrounding whether plaintiff received fair market value for her purchases when there was evidence available to him. Therefore, the ALJ committed harmful error.

**B.      The ALJ erred in determining the purpose of plaintiff's transfers for less than market value.**

The ALJ erred in determining the purpose of plaintiff's transfers for less than market value. The Court must affirm the agency's denial of benefits if the ALJ's findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The conclusion the ALJ came to regarding plaintiff's purpose in spending-down her money was not supported by substantial evidence. After reviewing the record, a reasonable mind cannot accept the ALJ's conclusion regarding plaintiff's purpose in spending her inheritance. There are several instances, in addition those

already mentioned, of plaintiff being confused, misguided and arguably hoodwinked by people who knew of her funds.

Plaintiff, after failing to purchase her late mother's home, tried to purchase a home from Carley Madison.  Tr. 29, 451-454.  Plaintiff admittedly knew nothing of how purchasing homes worked. Tr. 440.  In turn, she thought it best to give Carley Madison $3000 as a "down payment," in order to eventually purchase the home, even though Carley never gave her a total price she wanted for the home. Tr. 451-53.  All "negotiations" were oral and never followed through with.  In fact, plaintiff continued to give Carley and her partner more money for various purchases, under the impression that those payments were going towards the purchase of the home:

> So, initially, I'm thinking, okay, I give you, like Rob, they wanted $400 to purchase cars, I helped them purchase a car. So, that initially, to me in my mind, another down payment towards the home, you know, instead of giving the money back to me, and --
>
> Q: And so, as they're asking you for more money, so on top of the $3,000 you paid at the beginning on top of the rent that you had been paying, these extra requests for money like tell me more about that, did you feel like you could say no, did – how did you understand those payments?
>
> A: Yeah, I'm not used to saying no, and from the way she had explained it, it was just going to go towards, you know, the payment of the home. And like I said, we never got a chance to sit down and come to a final agreement, because I didn't find out about her being in trouble with the law.

Tr. 453.

The Court agrees with plaintiff, in that the record shows she was under the impression she would receive adequate consideration for her purchases.  *See* Pl. Br. #15 at 10; *see also* 42 U.S.C. § 1382(c)(1)(C)(iii)(II)[2]. The above exchange displays the nature of plaintiff's thought process.  She wanted stable housing and thought she could obtain that through friends, who deceived and stole from her in the end.  Tr. 454.  Though there is one instance in the record of plaintiff stating to an agency employee that "she was just trying to get rid of her money so she could get back on SSI," this alone is not substantial evidence for the ALJ to label plaintiff's purpose in spending-down her inheritance as such to exclusively "get back on SSI."  Tr. 176.

---

[2] The Act provides that a claimant shall not be deemed ineligible for benefits where there is a "satisfactory showing" made in accordance with the Commissioner's regulations that the resources in question were transferred "exclusively for a purpose other than to qualify for benefits."

Plaintiff satisfactorily showed that some of the resources she spent were transferred "exclusively for a purpose other than to qualify for benefits." 42 U.S.C. § 1382(c)(1)(C)(iii)(II). There is more than one instance where plaintiff attempted to use her inheritance to secure housing and safety for herself and her animals, but failed to do so at every point. Tr. 26, 30, 442, 454-55. Therefore, the ALJ committed harmful legal error in failing to provide substantial evidence to discount plaintiff's purpose in spending-down her inheritance.

**C.      The ALJ erred in finding that plaintiff did not qualify for an exception due to undue hardship.**

The ALJ found that plaintiff did not qualify for the undue hardship exception in 20 C.F.R. § 416.1246(d)(2). The exception states that an undue hardship exists when two conditions are met: (1) the individual alleges that failure to receive SSI benefits would deprive them of food or shelter; and (2) the individual's available funds (income and liquid resources) do not equal or exceed the full federal benefit rate plus the applicable federally administered state supplement, if any, due for their living arrangement for the month that undue hardship is alleged. 20 C.F.R. § 416.1246(d)(3). The ALJ found that because plaintiff took out large cash withdrawals and gave an unknown amount of loans to others, that there is no way to prove the actual amount of funds she has available to her. Tr. 19. This conclusion has some merit, however, in largely erroneous in relation to plaintiff's actual circumstances.

Plaintiff bought her RV in March of 2018. Tr. 454. By the end of March, Plaintiff alleges her resources were below $750.00. Tr. 223. By April 2018, plaintiff alleges she spent-down her inheritance to the point of indigency. *Id*. At that point, plaintiff was illegally parked at her aunt's home with no connection to water or sewage, then she was evicted in 2019 from her aunt's land and eventually parked her RV illegally near a park in Seaside, OR until her RV caught fire in February 2020. Tr. 26, 30, H. Decl. ¶ 2-5[3]. Defendant argues the Court should not consider plaintiff's new evidence because it is immaterial to the timeline of ineligibility, Def. Br. #22 at 8. However, the Court has authority to examine new evidence that was not before the ALJ. 42 U.S.C. § 405(g). Defendant argues that the newly submitted declarations

---

[3] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

do not bear directly and substantially on the ALJ's decision that plaintiff was ineligible for SSI benefits from October 2017 to December 2019, and would not have any bearing on the outcome. Def. Br. #22 at 8. The Court disagrees. The declaration from plaintiff sheds light on her circumstances at some of the earlier points in 2018, which was still within the ineligible period. H. Decl. ⁋ 2-4. Plaintiff's bank statements from April of 2018 show no activity, and it is highly doubtful plaintiff was sitting on hoards of cash withdrawals considering her circumstances in 2018-2022. Tr. 149-155.

Plaintiff has been alleging she qualified for the undue hardship exception since 2018, with the first prong of the exception being met due to her alleged and actual homeless/transient living arrangement, and the second prong being met due to her lack of resources by the time of April 2018. Tr. 223-29, 236-39, 289-98, 355-58. There is evidence that shows plaintiff's technical homelessness since March of 2018, when she bought her RV that was not a permanent living arrangement. The SSA definition of homelessness is "[a]n individual with no permanent living arrangement, i.e., no fixed place of residence, is considered homeless or transient." POMS SI 00835.060(A). The SSA gives an example of this definition, one being "A person who stays with a succession of friends or relatives and has no permanent living arrangement on the first of the month." *Id.* This was the case for plaintiff, as she bought and illegally parked her RV in her aunt's driveway due to her ineligibility to park in a private RV park. Tr. 26, 454-55. Her aunt later moved to a nursing facility and her home was later sold and plaintiff was evicted from that land. Tr. 26, 361-63, 425-31, H. Decl. ⁋ 2. Plaintiff has not had a permanent living arrangement since March of 2018, and met both prongs of the undue hardship exception in April 2018 due to her lack of any resources. Plaintiff's circumstances have only gotten worse since the ineligibility period, with plaintiff resorting to living in a tent off Highway 26, to living with a stranger who verbally abused and threatened her, to being rejected by many public resources in seeking help finding living arrangements. H. Decl. ⁋ 8-22.

The conclusion the ALJ came to regarding the undue hardship exception was not supported by substantial evidence. The ALJ's complete disregard of the first prong of the undue hardship exception, plaintiff's claims that her lack of benefits precluded her from safe and secure housing in 2018 onward, is a

blatant error in analysis.  The ALJ only discussed the second prong of the undue hardship exception.  After

reviewing the record, a reasonable mind cannot accept the ALJ's conclusion.  Though there are large sums

of cash withdrawals in the record, the Court agrees with plaintiff that someone with excess resources would

not live like plaintiff has been since 2018.

**REINSTATEMENT**

Plaintiff urges this court to address reinstatement on the issue of plaintiff's undue

hardship exception during the ineligibility period.  Pl. Br. #15 at 23-4.  When an ALJ decision is not

supported by substantial evidence or is based on legal error, the court generally remands for further

proceedings, but may also remand for an award of benefits if further proceedings are unnecessary to

develop the record. 42 U.S.C. § 405(g); *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099-1100 (9th Cir.

2014). Under the "credit-as-true rule," the court may remand for benefits without rehearing if:

> (1) The record is fully developed and further proceedings are unnecessary;
> (2) The ALJ failed to provide legally sufficient reasons for rejecting claimant testimony
> or
> medical opinion evidence; and
> (3) If improperly discredited evidence were credited as true, the ALJ must find the
> claimant as disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Though the inquiry in this case discusses how plaintiff spent her inheritance, the purposes

of the credit-as-true rule apply.  The record here is as fully developed as it can be.  The agency refuses to

reinstate plaintiff's benefits until she provides more proof of how she spent her inheritance.  Tr. 176.

There is no more proof to be had.  Plaintiff has been working with her attorney for several years at this

point and all efforts have been expended to find out how Plaintiff spent her inheritance.  There is no rule

in the POMS, nor any federal rule known to this Court that one must spend their inheritance using debit

or credit cards, checks or cash.  Plaintiff was entitled to spend her inheritance as she wanted, in whatever

way she wanted.  From a full review of the record, it seems that plaintiff was fully unaware of the

consequences that receiving an inheritance would have on her SSI benefits, but she placed a good faith

effort in finding out how she spent the money for her benefits to be reinstated.  The record shows how

10

plaintiff's disability has affected her decision-making process, interactions with others, and spending habits.  Plaintiff was taught from a young age to use cash transactions and avoid credit cards to prevent getting "yourself into trouble with it" Tr. 292, 447.  To punish someone for using cash in today's society seems illogical to the purpose of SSI benefits, which is to help those who are disabled.  That being said, the Court finds plaintiff qualified for the undue hardship exception as of April 2018, and reinstatement of her past benefits is ordered from that effective date, with the caveat that all past benefits plaintiff qualifies for, and any future benefits are paid out to a representative payee.

The SSA weighs all matters that may affect a beneficiary's ability to manage their funds in their own best interest.  The SSA decides that substantial harm exists if both of the following conditions exist: (i) Directly receiving benefits can be expected to cause you serious physical or mental injury; (ii) The possible effect of the injury would outweigh the effect of having no income to meet your basic needs. 20 C.F.R. § 416.611(a)(2)(i-ii).  Substantial harm in this case exists for plaintiff.  There is evidence in the record showing how plaintiff receiving her inheritance in such a large sum caused her serious mental injury due to others stealing, coercing and lying to her.  Plaintiff essentially lost her entire inheritance due to her own mental incapacities, coercion from others and theft.  Such injury would and has outweighed the effect of having no income to meet her basic needs.

20 C.F.R. § 416.610 states when payment will be made to a representative payee:

(a) We pay benefits to a representative payee on behalf of a beneficiary 18 years old or older when it appears to us that this method of payment will be in the interest of the beneficiary. We do this if we have information that the beneficiary is—
> (1) Legally incompetent or mentally incapable of managing benefit payments; or
> (2) Physically incapable of managing or directing the management of his or her benefit payments.

Here, both circumstances are met, as there is evidence in the record that plaintiff cannot physically keep track of the cash she has on hand (people have taken it straight out of her purse), nor can she mentally manage her money in a capable manner (failed home purchases due to oral promises and/or misunderstanding).  Having a representative payee is crucial in this case so that plaintiff can live safely, avoid homelessness and prevent being taken advantage of.  Plaintiff is urged to work with her attorney on

this matter so that past and present benefits can be paid out to her as soon as possible.

**CONCLUSION**

For the reasons set forth in this opinion, the Commissioner's decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits, with the caveat that those benefits be paid out to a representative payee.

IT IS SO ORDERED.

DATED this _21_ day of _August_, 2023.

Adrienne Nelson
United States District Judge